## PULLEN v. BERKLEY et al.

### No. 1903.

Court of Civil Appeals of Texas. Beaumont. April 25, 1930.

Rehearing Denied April 30, 1930.

P. R. Rowe, of Livingston, for appellant.

Strode & Pitts, of Conroe, for appellees.

HIGHTOWER, C. J.

The appellee R. H. Berkley filed this suit in the district court of Montgomery county against Welborne Daniels and W. G. Pullen, as defendants, alleging that Daniels, on the 12th day of November, 1926, executed and delivered to appellee a promissory note for $1,200 payable in installments and bearing interest at the rate of 10 per cent. per annum, and providing for the usual 10 per cent. attorneys' fees. It was alleged by appellee that the note was for the purchase price of a certain log wagon, describing it, and six mules that were sold and delivered by appellee to the defendant Daniels at the date of the note. It was further alleged by appellee that the sale of the wagon and mules was conditional, and that appellee did not part with the title to the property, and that he executed a conditional bill of sale to Daniels for the property. It was further alleged by appellee that the sale of the property was evidenced by a conditional sales contract retaining the title to the wagon and mules in appellee, and that such sales contract was duly and properly recorded in the chattel mortgage records of Montgomery county. It was further alleged by appellee that the defendant Pullen was setting up some character of claim to the wagon and mules which was subordinate and inferior to the right and claim of appellee to the property. Prayer was for judgment against defendant Daniels for the full amount of the $1,200 note, interest, and attorney's fees, and for judgment against both Daniels and Pullen for the title and possession of the wagon and mules. In the alternative appellee prayed that, in the event it should be found that he only had a chattel mortgage lien upon the wagon and mules, and therefore was not entitled to a judgment for the title and possession of the property, then appellee should have judgment for his debt as against defendant Daniels, as evidenced by the $1,200 promissory note, and for foreclosure of his chattel mortgage lien on the wagon and mules as against both Daniels and Pullen.

The defendant Daniels filed no answer in the case, nor did he make any appearance, but the defendant Pullen answered by general demurrer and several special exceptions and by general denial, and specially denied that appellee had any valid mortgage lien against the property in controversy to which he was entitled to foreclosure as against defendant Pullen, and that defendant specially averred in substance that he had purchased the property in controversy from the defendant Daniels, paying valuable consideration therefor in good faith and without any notice, actual or constructive, of any lien claimed by the appellee against the property. This statement of the pleadings will suffice for a disposition of this appeal.

A jury was demanded in the case, but upon conclusion of the evidence the court dismissed the jury and thereupon rendered judgment in favor of appellee R. H. Berkley against the defendant Daniels for the principal amount of the $1,200 note, interest, and attorney's fees, and against both defendants, Daniels and Pullen, for foreclosure of the chattel mortgage lien asserted by the appellee. From this judgment the defendant Pullen alone has prosecuted this appeal, and challenges the correctness of the judgment on a number of grounds.

We shall not discuss appellant's several contentions separately, because, as we view this record, the controlling questions in the case are as to whether the appellee had a valid chattel mortgage against the property in controversy as asserted by him, and, if so, whether the appellant was entitled to be protected as a purchaser of the property in controversy in good faith for valuable consideration and

without notice of appellee's chattel mortgage lien.

The material facts upon which this judgment is based are as follows: On November 12, 1926, the defendant Daniels executed and delivered to the appellee Berkley the following instrument:

"1200.00

"Montgomery, Texas, November 12, 1926.

"For value received, I promise to pay to R. H. Berkley, or order, at Montgomery, Texas, the sum of Twelve Hundred ($1200.00) Dollars on or before the 12th day of December A. D. 1926, the 12th day of January, February and March, A. D. 1927, and the sum of One Hundred and Eighteen ($118.75) Dollars and Seventy-five cents on or before the 12th day of April, May, June, July, August, September, October and November, A. D. 1927, respectively, each and all of said sums of money to bear interest from the date hereof, at the rate of ten per cent. per annum.

"If default is made in the payment of this note, or any installment thereof, when due, then, at the option of the holder and owner hereof, this entire note shall at once become due and payable. Also, if default is made in the payment of this note, or any installment thereof when due, and the same is thereafter placed in the hands of an attorney for collection, or if collected by legal proceedings, or through the Probate Court, I agree to pay ten per cent. additional on both the principal then due as an attorney's fee.

"This note is given in part payment of the purchase money of all that certain personal property, viz: a log wagon and six mules this day sold and delivered to me by said R. H. Berkley by bill of sale of even date herewith, and to be hereafter recorded in the County Clerk's office of Montgomery County, Texas, and the ownership, title and right in and to said property is and shall be vested in the said R. H. Berkley, his heirs and assigns until this note shall have been fully paid off according to its face and tenor, effect and reading, when the ownership and title to said personal property shall vest and be in me, said Welborn Daniels.

"Reference is here made to said bill of sale from said R. H. Berkley to me, and the record thereof when recorded for further description of said personal property and for any and all necessary purposes whatsoever.

"Welborn Daniels.

"In consideration of the premises and in order to secure the payment of the above and foregoing note according to its face and tenor, effect and reading, I have this day and do hereby bargain, sell and deliver unto the said R. H. Berkley the following mentioned and described personal property viz:

"Two gray horses about seven years old, about 16 hands high, weight about 1100 pounds each, not branded, named Frank and Jim;

"One dun horse about 7 years old, about 16 hands high, branded a heart with the letter S in the center thereof. All of these horses are now in my possession in Montgomery County, Texas.

"To have and to hold all and singular the above mentioned and described personal property unto him, the said R. H. Berkley, his heirs and assigns forever;

"Upon condition, never-the-less, that if I pay off and discharge the above and foregoing note according to its face and tenor, effect and reading, this sale shall become null and void, and no further force or effect; otherwise it shall be and remain in full force and effect.

"It is understood and agreed that this mortgage is given as further and additional security for the payment of the above and foregoing note, and it shall not in any way effect or impair any other security given for the payment of said note.

"Witness my hand this the 12th day of November, A. D. 1926.

"Welborn Daniels."

On the same date that the above-copied instrument was executed and delivered by the defendant Daniels to the appellee Berkley the following instrument was executed and delivered by Berkley to Daniels:

"R. H. Berkley to B/A  Welborne Daniels

"The State of Texas, County of Montgomery

"Know all men by these presents: That I, R. H. Berkley, of the county of Montgomery and State of Texas, for and in consideration of the sum of Twelve Hundred ($1200.00) Dollars to me paid and secured to be hereafter paid to me by Welborne Daniels, as follows, viz:

"The sum of Fifty ($50.00) Dollars to me cash in hand paid, the receipt of which is hereby acknowledged, and the further sum of Fifty ($50.00) Dollars to be paid to me on or before the 12th day of December, 1926, the 12th day of January, February and March A. D. 1927, each, said four payments amounting to the aggregate sum of Two Hundred ($200.00) Dollars; and the further sum of Nine Hundred and Fifty ($950.00) Dollars to be paid to me as follows: Viz:

"The sum of One Hundred and Eighteen ($118.00) Dollars and seventy-five cents, on or before the 12th day of April, May, June, July, August, September, October and November A. D. 1927, respectively, each and all of said payments to bear interest from the date hereof, at the rate of ten per cent. per annum until paid, and if said payments are not made at the maturity thereof, and their payment is forced through legal proceedings, or through the probate court, then ten per cent. additional on both the principal and in-

terest thereon shall be added as a collection fee; and in default of any payment, the holder and owner of such indebtedness, at his option, may and shall have the right to declare each and all payments herein above mentioned due and payable, and may and shall proceed to enforce payment thereof, have bargained, sold and delivered unto the said Welborne Daniels, all and singular the following mentioned and described personal property, viz:

"One eight wheel martin log wagon; known as the Talley wagon;

"One brown mare mule agout 15½ hands high, about 12 years old, named Kate, not branded;

"One brown mare mule about 15½ hands high, about ten years old, named Luck; not branded;

"Two black horse mules, about 15½ hands high, about 9 years old, named Jim and Ratler;

"One bay horse mule about 16 hands high, about 10 years old, named Pete;

"One black horse mule about 17 hands high, about 9 years old, named Alex.

"All of these mules are known as the Talley mules.

"It is agreed and understood by and between the parties hereto that if any of these mules die or are killed before the consideration herein above stated is fully paid off and discharged, the said Welborne Daniels shall immediately pay the value of the same to the said R. H. Berkley, or immediately replace the same with an animal or animals of like value.

"To have and to hold all and singular said personal property unto him, the said Welborne Daniels, his heirs and assigns forever; but it is expressly agreed, understood and contracted by the parties hereto, that the right, title and ownership of all and singular the said personal property shall be, is and shall remain vested in me, the said R. H. Berkley, until each, every and all of the purchase money for said personal property as herein above set out shall have been fully paid and discharged when the right, title and ownership shall become and be vested in the said Welborne Daniels, his heirs and assigns.

"Witness my hand this the 12th day of November, A. D. 1926.

"R. H. Berkley."

Each of the above-copied instruments was duly acknowledged before a notary public of Montgomery county on the 13th day of November, 1926, and each was duly filed in the office of the county clerk of Montgomery county for registration on January 6, 1927, at 9 o'clock a. m. The first of these instruments was duly recorded in the chattel mortgage records of Montgomery county, and the second of these instruments was duly recorded in the bill of sale records of Montgomery county, Tex.

The undisputed facts in the record show that the defendant Daniels never paid any part of the $1,200 note executed and delivered to the appellee Berkley, and the same was wholly unpaid at the time of the filing of this suit. Not long after the execution and delivery of the above-copied instruments the defendant Daniels, with his family, left Montgomery county, and it seems first went from that county to Walker county, where he stayed or sojourned a while, and from Walker county he went to Liberty county and remained there for a short while, and from Liberty county he went to Polk county, and had been in that county about two months and a half when this proceeding was commenced by the appellee Berkley, and a writ of sequestration was sued out by him, and the property in controversy was taken under that writ by the proper authorities of Polk county from whom the appellee, Berkley, replevied the property upon the failure of the defendant Pullen, from whose possession it was taken under the writ, to replevy the same.

The undisputed proof shows that the appellee Berkley did not consent for Daniels to remove any of the property in controversy from Montgomery county, nor did he have any knowledge that the property had been removed from Montgomery county at the time it was removed, but as soon as appellee learned of the removal of the property by Daniels from Montgomery county he was diligent in pursuing the property, and finally levied his writ of sequestration on the property in Polk county long before the expiration of four months after the property had been removed from Montgomery county to Polk county, as we have already shown.

When Daniels reached Polk county this record shows that he soon mortgaged the property in controversy to one W. H. Freeman of Polk county, and that he soon thereafter executed and delivered to the appellant Pullen a chattel mortgage covering the property in controversy, and appellant Pullen caused his mortgage to be duly and seasonably filed for registration in Polk county, where the property was then located. The undisputed evidence further shows that at the time the appellant Pullen took his mortgage upon the property from Daniels he had no actual knowledge that there was an existing chattel mortgage on the property in favor of the appellee Berkley, nor did appellant Pullen have actual knowledge that Berkley had or claimed to have any character of right or interest in or to the property in controversy. The undisputed facts further show that the defendant Daniels failed to discharge his indebtedness to W. H. Freeman, in whose favor he had executed a chattel mortgage, as we have just shown, and that Freeman was preparing to foreclose, or

threatened to foreclose, his mortgage on the property, and that when the appellant Pullen learned of this, in order to protect himself, he entered into an agreement with Freeman and Daniels for the purchase of the property in controversy by Pullen, he agreeing to pay off and discharge the Freeman indebtedness. This agreement was consummated, and the appellant Pullen, who is a practicing physician in Polk county, took the property in controversy and paid off the Freeman indebtedness against it and was holding and claiming the property as his own by purchase from Daniels at the time the appellee filed this suit and took the property from Pullen's possession by writ of sequestration.

It is the principal contention of learned counsel for appellant in this case that the first instrument copied above, and which was executed by Daniels to appellee Berkley, did not constitute a valid chattel mortgage lien in favor of Berkley on the wagon and mules therein mentioned, for the reason that the description of that property was so general and incomplete that it could not afford and did not give appellant constructive notice of the mortgage lien claimed by Berkley, although that instrument was registered in the chattel mortgage lien records of Montgomery county at the time Dr. Pullen purchased the property from Daniels in Polk county. If the description of the property in controversy as contained in the first instrument above copied was the only description of the property in controversy, then we would agree with counsel for appellant that the description as "one log wagon and six mules" was wholly insufficient as a description of the property in order to afford constructive notice of Berkley's claimed mortgage. But, as we have shown, the second instrument above copied, which the parties call a conditional bill of sale, and which was executed by Berkley to Daniels, was executed on the same day that the first instrument was executed, and the two were delivered at the same time, and both were duly acknowledged at the same time, and both were filed for record at the same time, tne one in the chattel mortgage records and the other in the bill of sale records of Montgomery county. We have shown also that the first instrument, which the parties denominate a "conditional sales contract," expressly states that the property intended to be covered by that instrument is more fully described in a bill of sale that was to be thereafter executed and recorded, and it is manifest that the description of the property in controversy, as contained in the bill of sale or second above copied instrument, is sufficient to clearly distinguish and identify the property in controversy and to afford constructive notice of Berkley's chattel mortgage thereon if it was permissible to look to the bill of sale, or second above described instrument, for a description of the property. We have no doubt on this point, and hold that, since the first instrument, or what the parties term a conditional sales contract, expressly referred to the bill of sale that Berkley at the same time was executing to Daniels, and which was in fact duly filed for record in the bill of sale records of Montgomery county at the time appellant Pullen purchased or acquired any interest in the property in controversy, he was charged with constructive notice of the description of the property as contained in the bill of sale. We see no escape from this conclusion under the authorities. In Humphrey on Chattel Mortgages, at page 76, § 155, the author, discussing the sufficiency of a description of property in a chattel mortgage, lays down the following as the general rule:

"From a study of a great number of decisions on this branch of our subject, a few of which are hereafter quoted, I am persuaded that two general rules may be laid down:

"(1) The description is sufficient if by it alone the property can be identified;

"(2) The description is sufficient if it states facts which would put a man of ordinary prudence upon inquiry, which if diligently pursued would lead to a full knowledge of the property conveyed."

Again that author, at page 78 of his work, says: "Any description then, which will enable third persons to identify the property, *aided by inquiries which the mortgage itself suggests, indicates, or directs, is sufficient;* it is not necessary that the mortgaged property should be so described in the instrument as to be susceptible of immediate identification by the written description alone, but it will be sufficient if the description in the instrument points to evidences whereby the precise thing mortgaged may be ascertained." Note: Italics ours.

In the case of Conley v. Dimmit County Bank (Tex. Civ. App.) 181 S. W. 271, 272, it was said: "It is not necessary that mortgaged property should be so described as to be capable of being identified by the written recital, but the description is sufficient if it points to evidence whereby the precise thing mortgaged may be ascertained"—citing authorities.

As we have already shown, at the time Dr. Pullen became interested in the property in controversy there was duly of record in the bill of sale records of Montgomery county the instrument denominated by the parties a conditional bill of sale, and which is the second instrument copied above, and this instrument fully and clearly, as we hold, described the property here in controversy, and the first instrument above copied, denominated by the parties a conditional sales contract, expressly referred to the conditional bill of

928

sale for a full and complete description of the wagon and mules that were intended to be described in the first instrument. Unquestionably, if Dr. Pullen had examineu the chattel mortgage records of Montgomery county and had discovered the first instrument copied above, he could have readily ascertained a full and complete description of the property intended to be covered by that instrument if he had gone to the bill of sale records, as the first instrument directed should be done, and therefore we hold, in line with what we consider the proper rule to be, that Dr. Pullen was charged with constructive notice of appellee's chattel mortgage on the property in controversy at the time he purchased the same from Daniels, or became interested in any way in the same. This conclusion obviates the necessity of the discussion of any other contention made by counsel for appellant, and the judgment should be affirmed, which has been our order.